**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| IN RE: CANVASSING OBSERVATION | : | No. 30 EAP 2020 |
| | : | |
| | : | Appeal from the November 5, 2020, |
| APPEAL OF: CITY OF PHILADELPHIA | : | Single-Judge Order of the Honorable |
| BOARD OF ELECTIONS | : | Christine Fizzano Cannon of the |
| | : | Commonwealth Court at No. 1094 |
| | : | CD 2020, reversing the November 3, |
| | : | 2020 Order of the Honorable Stella |
| | : | Tsai of the Court of Common Pleas |
| | : | of Philadelphia County at November |
| | : | Term 2020, No. 07003 |
| | : | |
| | : | SUBMITTED: November 13, 2020 |

**OPINION**

JUSTICE TODD                                        DECIDED: **November 17, 2020**

This appeal arises out of the processing of mail-in and absentee ballots received from voters in Philadelphia County in the November 3, 2020 General Election. Specifically, Appellee Donald J. Trump, Inc. (the "Campaign") orally moved for the Philadelphia County Court of Common Pleas to give its representative more proximate access to the canvassing activities being carried out by Appellant, the Philadelphia County Board of Elections (the "Board"). The trial court denied relief, the Commonwealth Court reversed, and the Board now appeals that order. For the following reasons, we vacate the order of the Commonwealth Court, and reinstate the trial court's order denying the Campaign relief.

**I. Background**

This dispute concerns the Board's pre-canvassing and canvassing of mail-in and absentee ballots at the Philadelphia Convention Center. According to the Board, in advance of the election, it arranged the workspace of its employees at this facility in a manner that it considered best suitable for the processing and maintenance of the security of the estimated 350,000 absentee and mail-in ballots it anticipated receiving, while ensuring that the social distancing protocols for COVID-19 promulgated by the federal Centers for Disease Control were maintained and the voter's privacy in his or her ballot was protected, and providing a candidate or campaign representative with the ability to observe the entirety of the pre-canvassing and canvassing process. N.T. Hearing, 11/3/20, at 10-11.[1]

Under the Board's authority, a designated area of the Convention Center was divided into discrete sections, each devoted to various aspects of the pre-canvassing and canvassing process. *Id.* at 22. Each section contained three rows of fifteen folding tables with each table separated by 5-6 feet. *Id.* at 24. In the first section, workers examined the back of the ballot return envelopes and then, based on that examination, sorted the envelopes into different trays. *Id.* at 27. In the next section, ballots in their secrecy envelopes were first extracted from the ballot return envelope by machine, and then, while encased in their secrecy envelopes, were sent on to another machine which sliced open the secrecy envelope and removed the ballot from within. *Id.* at 28. During this phase, ballots without secrecy envelopes – so-called "naked" ballots – were segregated and placed into a separate tray.[2] *Id.* at 30.

---

[1] Except as otherwise noted, such citations are to the notes of testimony of the hearing before the trial court.

[2] Ballots not placed into the provided secrecy envelopes are invalid. *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 380 (Pa. 2020).

Pursuant to the Election Code, designated observers for campaigns or candidates were permitted to physically enter the Convention Center hall and observe the entirety of this process; however, the Board erected a waist-high security fence to separate the observers from the above-described workspace of Board employees. The fence, behind which observers could freely move, was separated from the first row of employees' desks in each section by a distance of approximately 15-18 feet. *Id.* at 23. Board employees used this "buffer" area between the security fence and their workspace to enter or leave their work areas for their shifts, or to take scheduled breaks. *Id.* at 30-31.

On the morning of November 3, 2020 – Election Day – the Campaign sent a designated representative, Attorney Jeremy Mercer, to observe the pre-canvassing and canvassing process. Attorney Mercer entered the Convention Center at 7:00 a.m. and remained there throughout the entire day. He testified that he was able to move freely along the length of the security fence and observe the employees engaged in their pre-canvassing and canvassing activities from various vantage points. *Id.* at 21. He related that, while he could see the Board employees in the first section of the workspace examining the back of the ballot return envelopes, from his position, he could not read the actual declarations on the ballot envelopes. *Id.* at 27. Regarding the ballot extraction activities in the next section, Attorney Mercer testified that he could see employees removing the ballots contained in secrecy envelopes from the return envelopes, and that, when "watching closely," he could discern if any return envelopes contained naked ballots. *Id.* at 30. However, he stated that he could not see whether there were any markings on the security envelopes themselves.[3] *Id.* at 38.

---

[3] The Election Code prohibits the security envelope from containing any "text, mark or symbol which reveals the identity of the elector, the elector's political affiliation or the elector's candidate preference." 25 P.S. § 3146.8(g)(4)(ii).

At 7:45 a.m. on Election Day, the Campaign filed a suit in the Philadelphia Court of Common Pleas challenging the location where observers such as Attorney Mercer could watch the process. The Campaign subsequently withdrew that action, without prejudice, but then refiled it at 9:45 p.m. that night. The trial court subsequently conducted an evidentiary hearing that same night utilizing the "Zoom" videoconference tool, which enabled Attorney Mercer to testify remotely.

After hearing Attorney Mercer's testimony and argument from the Campaign and the Board, the trial court rejected the Campaign's primary argument, raised orally during the hearing, that Section 3146.8(b) of the Election Code – which allows designated watchers or observers of a candidate "to be present when the envelopes containing official absentee ballots and mail-in ballots are opened and when such ballots are counted and recorded," 25 P.S. § 3146.8(b) – requires that the observers have the opportunity to "meaningfully . . . see the process." N.T. Hearing, 11/3/20, at 49. In rejecting the argument, the trial court noted that Section 3146.8 contained no language mandating "meaningful observation"; rather, the court interpreted the section as requiring only that the observer be allowed to be "present" at the opening, counting, and recording of the absentee or mail-in ballots. Trial Court Opinion, 11/4/20, at 3-4.

The court observed that Attorney Mercer's testimony that he could not see individual markings on the secrecy envelopes, or determine whether the signature on all the ballot envelopes was properly completed, did not establish a violation of Section 3416.8, inasmuch as that statute "provides for no further specific activities for the watchers to observe, and no activities for the watchers to do other than simply 'be present'." *Id.* at 4. The court opined that, under this section, "[w]atchers are not directed to audit ballots or to verify signatures, to verify voter address[es], or to do anything else that would require a watcher to see the writing or markings on the outside of either

envelope, including challenging the ballots or ballot signatures." *Id.* Consequently, that same day, the trial court denied the Campaign's request that the Board modify the work area to allow for closer observation of the ongoing ballot canvassing. The court indicated, however, that it was not discouraging the Board from providing an additional corridor for observers along the side of the tables to watch the proceedings, provided COVID-19 protocols and voter information secrecy protections were maintained.[4] Trial Court Order, 11/3/20.

The Campaign immediately appealed to the Commonwealth Court, and the matter was assigned to the Honorable Christine Fizzano Cannon.[5] Judge Fizzano Cannon held a status conference on the night of November 4, 2020, and issued an order on the morning of November 5, 2020, which reversed the trial court. She directed the trial court to enter an order by 10:30 a.m. to require "all candidates, watchers, or candidate representatives be permitted to be present for the canvassing process pursuant to 25 P.S. § 2650 and/or 25 P.S. § 3146.8 and to be permitted to observe all aspects of the canvassing process within 6 feet, while adhering to all COVID-19 protocols." Commonwealth Court Order, 11/5/20.

In her opinion, filed later that day, Judge Fizzano Cannon focused her analysis on what she considered to be the relevant governing provisions of the Election Code, Section 3146.8(b) and Section 3146.8(g)(1.1). Section 3146.8(b) provides:

> Watchers shall be permitted to be *present* when the envelopes containing official absentee ballots and mail-in ballots are opened and when such ballots are counted and recorded.

---

[4] It should be noted that the pre-canvassing and canvassing activities were also broadcast live on YouTube.

[5] The Pennsylvania Democratic Party ("Intervenor") was granted leave to intervene in these proceedings by the Commonwealth Court.

25 P.S. § 3146.8(b) (emphasis added). Section 3146.8(g)(1.1) states, in relevant part:

> The county board of elections shall meet no earlier than seven o'clock A.M. on election day to pre-canvass all ballots received prior to the meeting . . . One authorized representative of each candidate in an election and one representative from each political party shall be permitted to *remain in the room* in which the absentee ballots and mail-in ballots are pre-canvassed.

25 P.S. § 3146.8(g)(1.1) (emphasis added).

Judge Fizzano Cannon noted that the parties offered competing interpretations of the phrases "present," and "to remain in the room," with the Board arguing that these terms require only that the observer be physically present in the room where the ballot counting occurs; whereas the Campaign contended that these phrases required the observer to be able to *observe* "meaningfully," in addition to being physically present. Judge Fizzano Cannon deemed each of these interpretations to be reasonable, and, hence, concluded the statutory language was ambiguous.

Because these provisions of the Election Code had as their purpose "maintaining the integrity of the elective process in the Commonwealth," the judge determined that the language in question "imports upon . . . candidates' representatives at least a modicum of observational leeway to ascertain sufficient details of the canvassing process for the purpose of intelligently assessing and/or reporting to the candidate represented the details of the canvassing process." Commonwealth Court Opinion, 11/5/20, at 5. In her view, in order for representatives to fulfill their reporting duty to their candidate, they are required to "have the opportunity to observe the processes upon which they are to report," *id.*, and so mere physical presence of the observers was insufficient to guarantee this "meaningful observation," *id.* at 6.

Judge Fizzano Cannon then found that, based on Attorney Mercer's testimony that, while he was physically present in the room where the pre-canvassing and

canvassing processes were occurring, the distance from which he was observing those processes, as well as the physical barriers in the room, prevented him from observing the ballots being processed, the ballot envelopes, the secrecy envelopes, and any markings on the secrecy envelopes, depriving him of the ability to actually observe those processes "in any meaningful way." *Id.* at 8. Consequently, the judge concluded that the trial court erred as a matter of law in determining that the Board had complied with the Election Code. The Board filed an emergency petition for allowance of appeal with our Court on the morning of November 5, 2020.

While this petition was pending, that same day, the Campaign filed a one-page "Complaint and Motion for Emergency Injunction" in the United States District Court for the Eastern District of Pennsylvania alleging, *inter alia*, that, in the aftermath of the Commonwealth Court's order in the instant case, the Board was violating the Election Code by "refusing to allow any representatives and poll watchers for President Trump and the Republican Party" to observe the counting of the ballots, and that the "counting continues with no Republicans present." *See* Complaint and Motion for Emergency Injunction in *Donald J. Trump For President, Inc. v. Philadelphia County Board of Elections*, No. 20-5533 (E.D. Pa. filed Nov. 5 2020) (hereinafter "*Trump*") (attached as Exhibit 2 to Board's Brief), at ¶¶ 4 & 5.

That case was assigned to District Court Judge Paul S. Diamond, who held a hearing on the request for an emergency injunction at 5:30 p.m. on November 5, 2020. During the hearing, counsel for the Campaign stated that the Campaign had "a nonzero number of people in the room." N.T. Hearing in *Trump*, 11/5/20 at 10. Judge Diamond, seeking clarification of the meaning of the term "nonzero", asked counsel for the Campaign directly: "as a member of the bar of this Court, are people representing the

Donald J. Trump for President [campaign], representing the plaintiff in that room?" *Id.* at 11. Counsel replied "yes." *Id.*

Because the District Court recognized that the petition for allowance of appeal filed by the Board was pending before our Court, and that a decision from our Court on the proper interpretation of the governing provisions of the Election Code would obviate the need for it to rule on a question of state law, the District Court encouraged the parties to reach an interim accommodation. Thus, the Board and the Campaign reached an agreement, which was entered on the record in open court before Judge Diamond, under which the crowd control barrier, which the Board had moved to within six feet of the first row of tables in its employees' work area as the result of the Commonwealth Court decision, would remain in that position, and that all campaign observers would have equal access to positions behind that barrier to watch the canvassing process. *Id.* at 38-40. Judge Diamond deferred action on the merits of the underlying claims in the lawsuit, which remains pending.

Subsequently, on November 9, 2020, the Campaign filed yet another federal lawsuit, in the United States District Court of the Middle District of Pennsylvania, seeking to enjoin Pennsylvania from certifying the results of the November 3, 2020 General Election or, alternatively, to exclude from the certified results "the tabulation of absentee and mail-in and ballots for which [its] watchers were prevented from observing during the pre-canvass and canvass in the County Election Boards." Complaint for Declaratory and Injunctive Relief in *Donald J. Trump, Inc., et.al. v. Boockvar*, No. 20-CV-02078 (M.D. Pa. filed Nov. 9, 2020) (Exhibit 1 to Board's Brief), at 84. This matter was assigned to District Court Judge Matthew Brann who promptly issued an order setting an expedited schedule for the Campaign to file motions for injunctive relief, and for the Board to file a responsive motion thereto as well as a motion to dismiss. Notably, however, on November 15, 2020,

the Campaign filed an amended complaint, removing all counts which were based on canvassing access. *See* First Amended Complaint Verified Complaint for Declaratory and Injunctive Relief in *Donald J. Trump, Inc., et.al. v. Boockvar*, No. 20-CV-02078 (M.D. Pa. filed Nov. 15, 2020).

During the interim, on November 9, 2020, our Court granted the Board's emergency petition for allowance of appeal on the following issues:

> 1. Whether, as a matter of statutory construction pursuant to Pennsylvania law, the Commonwealth Court erred in reversing the trial court, which concluded that Petitioner City of Philadelphia Board of Elections' regulations regarding observer and representative access complied with applicable Election Code requirements.
>
> 2. Whether the issue raised in Petitioner's petition for allowance of appeal is moot.
>
> 3. If the issue raised in Petitioner's petition for allowance of appeal is moot, does there remain a substantial question that is capable of repetition yet likely to evade review, and, thus, fall within an exception to the mootness doctrine.

In our order, we directed the Prothonotary to establish an expedited briefing schedule; we also indicated that our grant order was not a stay of the Board's canvassing process, which is ongoing as of this writing.[6]

## II. Mootness

---

[6] Bryan Cutler, Speaker of the Pennsylvania House of Representatives, and Kerry Benninghoff, Majority Leader of the Pennsylvania House of Representatives, have filed a motion to intervene in this matter before our Court, as well as an accompanying brief. While we deny this motion, we, nevertheless, accept the accompanying brief as an *amicus* brief.

We begin by addressing whether the central legal issue in this matter – involving an interpretation of the provisions of the Election Code establishing campaign access requirements to ballot canvassing activities – is moot. *See Stuckley v. Zoning Hearing Board of Newtown Township*, 79 A.3d 510, 516 (Pa. 2013) (we will generally not address matters where there is no actual case or controversy between the parties). Both parties and Intervenor argue that this case is not moot because the Board continues to count ballots, and the Campaign continues to want its representatives to have maximal access to the canvassing process.

We conclude that, because ballots are still being canvassed by the Board at the time of this writing, the legal question before us is not moot.[7] In this regard, we note that the interim agreement between the parties entered in the federal litigation being overseen by Judge Diamond did not purport to resolve this question, and, indeed, Judge Diamond expressly refrained from addressing it as he viewed it as purely a question of Pennsylvania law which could be definitively resolved only by our Court. We will, therefore, proceed to address the merits of the issue before us.

### III.  Access under the Election Code

### A.  Arguments of the Parties

The Board argues that the Election Code granted to it the express statutory authority "[t]o make and issue such rules, regulations and instructions, not inconsistent

---

[7] Even were the ballot counting process to conclude prior to our final disposition of this matter, we regard this issue before us as one which is capable of repetition but likely to evade review, and therefore subject to our review under this exception to the mootness doctrine. *See Reuther v. Delaware County Bureau of Elections*, 205 A.3d 302, 306 n.6 (Pa. 2019) ("Given the abbreviated time frame applicable to elections and the amount of time that it takes for litigation to reach this Court, this exception is particularly applicable when the question presented relates to an election dispute.").

with law, as they may deem necessary for the guidance of . . . elections officers and electors." Board Brief at 32 (quoting 25 P.S. § 2642(f)). Thus, it reasons that the access rules it established for ballot processing in Philadelphia County – which were based on its perceived need for protecting its workers' safety from COVID-19 and physical assault from those individuals who have contact with its workers; ensuring security of the ballots; efficiently processing large numbers of ballots; protecting the privacy of voters; and ensuring campaign access to the canvassing proceedings – are a valid exercise of its authority. The Board maintains that these rules can be invalidated by a court only if they are inconsistent with the Election Code.

In determining whether its access rules are consistent with the Election Code, the Board contends that only two provisions of the Code are relevant: 25 P.S. § 3146.8(g)(1.1) (specifying that "[o]ne authorized representative of each candidate in an election and one representative from each political party shall be permitted to remain in the room in which the absentee ballots and mail-in ballots are pre-canvassed"), and Section 3146.8(g)(2) (providing that "[o]ne authorized representative of each candidate in an election and one representative from each political party shall be permitted to remain in the room in which the absentee ballots and mail-in ballots are canvassed.").

The Board rejects the relevance of Section 3146.8(b), given that it sets forth the access requirements for "watchers".[8] The Board characterizes this provision as vestigial

---

[8] Section 3146.8(b) provides:

> Watchers shall be permitted to be present when the envelopes containing official absentee ballots and mail-in ballots are opened and when such ballots are counted and recorded.

in nature, reflecting the manner in which absentee ballots were handled prior to the 2006 and 2019 amendments to the Election Code which, respectively, added Section 3146.8(g)(2) and Section 3146.8(g)(1.1). Prior to those amendments, absentee ballots received by a board of elections were taken to the electors' local polling places to be canvassed, and, thus, candidates' designated poll watchers were permitted by Section 3146.8(b) to remain in the room at the polling place while the absentee ballots were canvassed. According to the Board, Sections 3146.8(g)(1.1) and (2) established that all mail-in and absentee ballots would be pre-canvassed and canvassed at a central location designated by the board of elections; hence, poll watchers are not granted access to these proceedings. Consequently, in the Board's view, the rights of the Campaign's designated representative in this matter are delineated exclusively by Sections 3146.8(g)(1.1) and (2).

The Board contends that these statutory provisions should be construed in accordance with the plain meaning of their terms, *i.e.*, requiring only that a candidate's authorized representative be permitted to remain in the room while the ballots are pre-canvassed or canvassed. The Board notes that the Campaign's representative was, in fact, permitted to be in the room at the Convention Center where the ballots were being pre-canvassed and canvassed at all times during this process, just as these provisions require. Relatedly, the Board contends that, even if Section 3146.8(b) of the Election Code were deemed to be applicable herein, its requirements were met as well, given that the Campaign's representative was present at all times when absentee and mail-in ballots were opened, counted, and recorded.

Moreover, the Board emphasizes that, contrary to the Commonwealth Court's conclusion, the evidence of record indicated that Attorney Mercer could see every portion of the pre-canvassing and canvassing process and, as a result, could confirm that the only ballots which were scanned and tabulated were those which had been removed from secrecy envelopes, and that the outer ballot envelope had been inspected for sufficiency and then sorted.

The Board points out that Attorney Mercer's complaints about being unable to read the actual declarations on the ballot envelopes, or his inability to see whether the secrecy envelopes contained improper markings, were relevant only to his desire to determine if the ballots met the requirements of the Election Code. However, the Board stresses that our Court very recently, in *In re: November 3, 2020 General Election*, ___ A.3d.____, 2020 WL 6252803 (Pa. Oct. 23, 2020), interpreted the Election Code as precluding time-of-canvassing challenges by campaign representatives; hence, the Board maintains that a candidate's representative has no need for the information about which Attorney Mercer complains, as the representative cannot lodge a challenge based on it. Most importantly, however, from the Board's perspective, there is nothing in the statutory language of Sections 3146.8(g)(1.1) and (2) which grants a candidate's representative an unqualified right of access to that kind of information during the pre-canvassing and canvassing process.[9]

The Campaign responds that "the plain meaning and purpose of the statutes at issue is to provide the public the opportunity to observe and vet the canvassing and

---

[9] Intervenor's brief endorses the Board's contention that the Commonwealth Court erred in its interpretation of the relevant provisions of the Election Code, but it does not develop a separate argument to support this claim.

tabulation of the vote." Campaign Brief at 17. The Campaign reasons that, as the Election Code gives a candidate's representative the right to be "present" and to "remain in the room" during the canvassing of absentee and mail-in ballots, citing 25 P.S. § 2650 ("Every candidate shall be entitled to be *present* in person or by attorney in fact duly authorized, and to participate in any proceeding before any county board whenever any matters which may affect his candidacy are being heard, including any computation and canvassing of returns of any primary or election or recount of ballots or recanvass of voting machines affecting his candidacy." (emphasis added)); *id.* § 3146.8(b) (allowing watchers to "be *present* when the envelopes containing official absentee ballots and mail-in ballots are opened and when such ballots are counted and recorded" (emphasis added)); *id.* § 3146.8(g)(2) (providing that an "authorized representative of each candidate in an election and one representative from each political party shall be permitted to *remain in the room* in which the absentee ballots and mail-in ballots are canvassed" (emphasis added)), these terms should be broadly interpreted consistent with their overall purpose of allowing public observation of the vote and the counting thereof. The Campaign rejects the Board's interpretation as "a hyper-technical focus on the words themselves," that disregards this purpose. Campaign Brief at 19.

The Campaign argues that, under the Board's interpretation, merely being in the far end of a room like the Convention Center, which is as large as a football field, would be sufficient to comport with these requirements. This, in the Campaign's view, "defies logic and reasonableness." *Id.* at 20. The Campaign contends that the Board's setup – imposing a barrier and having some tables in the area over a hundred feet away from the edge of the security fence – effectively deprived its representative of the ability to be truly

present, and effectively eliminates the representative's ability to perform his or her role of ensuring openness and transparency in the electoral process.

The Campaign denies that it was seeking the right to challenge mail-in or absentee ballots at the time of canvassing; rather, it claims that it was merely seeking the right to observe "in a meaningful way" the Board's conduct of the electoral process so that it could "challenge that process through appropriate litigation." Campaign Brief at 22 (emphasis omitted). The Campaign asserts its ability to do so is vital given that these canvassing activities have a high prospect of human error.

## B.  Analysis

As this issue presents a question of statutory interpretation under Pennsylvania law, our standard of review is *de novo*, and our scope of review is plenary. *Danganan v. Guardian Protection Services*, 645 Pa. 181, 179 A.3d 9, 15 (2018). Our objective is, therefore, to ascertain and effectuate the intent of the General Assembly. *Id.*; *see also* 1 Pa.C.S. § 1921(a). It is well established that "[t]he best indication of legislative intent is the plain language of the statute." *Crown Castle NG East v. Pennsylvania Public Utility Commission*, 234 A.3d 665, 674 (Pa. 2020). In ascertaining the plain meaning of statutory language, we consider it in context and give words and phrases their "common and approved usage." *Commonwealth by Shapiro* v. *Golden Gate National Senior Care*, 194 A.3d 1010, 1027-28 (Pa. 2017). When the words of a statute are free and clear of all ambiguity, they are the best indicator of legislative intent; hence, in such circumstances, "we cannot disregard the letter of the statute under the pretext of pursuing its spirit." *Fletcher v. Pennsylvania Property & Casualty Insurance Guarantee Association*, 603 Pa. 452, 985 A.2d 678, 684 (2009) (citing 1 Pa.C.S. § 1921(b)). Consistent with these

principles, when interpreting a statute "we must listen attentively to what the statute says, but also to what it does not say." *Discovery Charter School v. School District of Philadelphia*, 166 A.3d 304, 321 (Pa. 2017). Moreover, regarding the factual findings of the trial court, we must defer to those findings if they are supported by the evidence. *Gentex Corp. v. WCAB (Morack)*, 23 A.3d 528, 534 (Pa. 2011); *Generette v. Donegal Mutual Insurance Company,* 957 A.2d 1180, 1189 (Pa. 2008).

As a threshold matter, given the specific issue in this case — the degree of access required by the Election Code for an "authorized representative" of a candidate to the pre-canvassing and canvassing proceedings of an election board — we regard Sections 3146.8(g)(1.1) and (2) of the Code to be the governing statutory provisions, as they directly set forth the rights of such individuals. Section 2650, offered by the Campaign, by its plain terms is inapplicable, as we are addressing the right of access of a campaign's representative to canvassing proceedings, not a candidate or his "attorney in fact". Section 3146.8(b) is likewise not controlling, given that it applies only to the right of "watchers" to be present while ballots are canvassed. The Election Code contains specific certification requirements for an individual to be appointed as a "watcher," *see* 25 P.S. § 2687 ("Appointment of watchers"), and there is no evidence of record establishing that Attorney Mercer met these requirements, and, critically, he did not identify himself as a watcher, but rather as "one of the representatives designated by the Trump campaign . . . to observe the pre-canvass." N.T. Hearing, 11/3/20, at 20-21.

As recited above, Section 3146.8(g)(1.1) requires only that an authorized representative "be permitted to *remain in the room* in which the absentee ballots and mail-in ballots are pre-canvassed," 25 P.S. § 3146.8(g)(1.1) (emphasis added), and Section

3146.8(g)(2) likewise mandates merely that an authorized representative "be permitted to *remain in the room* in which the absentee ballots and mail-in ballots are canvassed." 25 P.S. § 3146.8(g)(2) (emphasis added). While this language contemplates an opportunity to broadly observe the mechanics of the canvassing process, we note that these provisions do not set a minimum distance between authorized representatives and canvassing activities occurring while they "remain in the room." The General Assembly, had it so desired, could have easily established such parameters; however, it did not. It would be improper for this Court to judicially rewrite the statute by imposing distance requirements where the legislature has, in the exercise of its policy judgment, seen fit not to do so. *See Sivick v. State Ethics Commission*, ___ A.3d ___. 2020 WL 5823822, at *10 (Pa. filed Oct. 1, 2020) ("It is axiomatic that we may not add statutory language where we find the extant language somehow lacking.").

Rather, we deem the absence of proximity parameters to reflect the legislature's deliberate choice to leave such matters to the informed discretion of county boards of elections, who are empowered by Section 2642(f) of the Election Code "[t]o make and issue such rules, regulations and instructions, not inconsistent with law, as they may deem necessary for the guidance of . . . elections officers." 25 P.S. § 2642(f).

In the case at bar, the Board promulgated regulations governing the locations in which authorized representatives were permitted to stand and move about while observing the pre-canvassing and canvassing process. The Board's averments that it fashioned these rules based on its careful consideration of how it could best protect the security and privacy of voters' ballots, as well as safeguard its employees and others who would be present during a pandemic for the pre-canvassing and canvassing process,

while, at the same time, ensuring that the ballots would be counted in the most expeditious manner possible, were undisputed by the Campaign. We discern no basis for the Commonwealth Court to have invalidated these rules and impose arbitrary distance requirements.

Significantly, as to any opportunity to observe the mechanics of the canvassing process, the evidence of record, provided through the Campaign's own witness, Attorney Mercer, whom the trial court deemed to be credible, indicates that the Board's rules regarding where campaign representatives could remain in the room to view the pre-canvassing and canvassing process did not deprive Attorney Mercer of the ability "to actually observe the . . . process in any meaningful way," as the Commonwealth Court concluded, Commonwealth Court Opinion, 11/5/20, at 8, and the Campaign presently argues. According to Attorney Mercer's candid testimony, which the trial court accepted as credible, from his vantage point, he could view the entirety of the pre-canvassing and canvassing process. Clearly, then, Attorney Mercer had the opportunity to observe the mechanics of the canvassing process. Specifically, Attorney Mercer witnessed Board employees inspecting the back of ballot envelopes containing the voter's declaration, before sending them on for processing; witnessed ballots being removed from their secrecy envelopes, and naked ballots which had been delivered to the Board without a secrecy envelope being segregated from ballots which arrived within such envelopes; saw that the ballot processing methods utilized by the Board were not destroying the ballot envelopes containing the voter's declaration; and perceived that the ballot secrecy envelopes were being preserved during their processing. *See* N.T. Hearing, 11/3/20, at 20-21, 27, 30, 38; Trial Court Order, 11/3/20 ("The [Campaign's] witness provided copious

testimony as to his ability to observe the opening and sorting of ballots."). Although Attorney Mercer related that he could not view the actual declarations on the ballot envelopes, nor examine individual secrecy envelopes for improper markings, as the trial court properly determined, this information would only be necessary if he were making challenges to individual ballots during the pre-canvassing and canvassing process, which appeared to be his primary motivation in seeking such information. *See id.* at 37-38; Trial Court Order, 11/3/20 ("His concerns pertained to his inability to observe the writing on the outside of the ballots. Given that observers are directed only to observe and not to audit ballots, we conclude, based on the witness's testimony, that the Board of Elections has complied with the observation requirements under 25 P.S. [§] 3146.8."). As discussed above, such challenges are not permissible under the Election Code. Thus, as found by the trial court, Attorney Mercer was able to appropriately observe that the Board's employees were performing their duties under the Election Code.

In sum, we conclude the Board did not act contrary to law in fashioning its regulations governing the positioning of candidate representatives during the pre-canvassing and canvassing process, as the Election Code does not specify minimum distance parameters for the location of such representatives. Critically, we find the Board's regulations as applied herein were reasonable in that they allowed candidate representatives to observe the Board conducting its activities as prescribed under the Election Code. Accordingly, we determine the Commonwealth Court's order was erroneous. Thus, we vacate that order, and reinstate the trial court's order.

Jurisdiction relinquished.

Justices Baer, Donohue, Dougherty and Wecht join the opinion.

Chief Justice Saylor files a dissenting opinion in which Justice Mundy joins.

Justice Mundy files a dissenting opinion.